Filed 12/30/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| CHRISTINA LEEPER, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> SHIPT, INC., et al., <br><br> Defendants and Appellants. | B339670 <br><br> (Los Angeles County <br> Super. Ct. No. 24STCV06485) |

APPEAL from an order of the Superior Court of Los Angeles County, Daniel S. Murphy, Judge. Reversed with directions.

Seyfarth Shaw, Camille A. Olson, Candace Bertoldi, Richard B. Lapp and Christopher A. Crosman for Defendants and Appellants.

Lieff Cabraser Heimann & Bernstein, Daniel M. Hutchinson, Michelle A. Lamy and Faith E. A. Lewis for Plaintiff and Respondent.

Shipt, Inc. (Shipt) and its parent company Target Corporation (Target) (collectively, appellants) appeal from an order denying their motion to compel arbitration in an action brought against them by respondent Christina Leeper under the Private Attorneys General Act of 2004 (Lab. Code, § 2698 et seq.) (PAGA).[1]  The court denied the motion on the basis that Leeper's PAGA action did not allege any individual claims subject to arbitration under the parties' arbitration agreement.

Based on the unambiguous, ordinary meaning of the relevant statutory language and the legislative history of that language, however, we conclude that every PAGA action necessarily includes an individual PAGA claim.[2]  Accordingly, we reverse and direct the court to enter a new order (1) compelling the parties to arbitrate Leeper's individual PAGA claim and (2) staying the representative PAGA claim portion of the lawsuit.

## FACTS AND PROCEEDINGS BELOW

### A.    The Arbitration Agreement Between Leeper and Appellants

Shipt is an online ordering platform whose members arrange for Shipt "[s]hoppers" to purchase and provide delivery of goods from local merchants.  On March 19, 2019, Leeper entered into an independent contractor agreement with Shipt to provide services as a Shipt shopper.  The independent contractor

---

[1] Unless otherwise indicated, all further statutory references are to the Labor Code.

[2] See pages 6–7, *post*, regarding our use of the terminology "individual PAGA claim" and "representative PAGA claim."

agreement references and incorporates a separate arbitration agreement Leeper and Shipt also executed.

The arbitration agreement obligates Leeper and appellants[3] to "resolve[ ] through mandatory, binding arbitration" "any and all disputes, claims, or controversies of any kind and nature between [them]." The arbitration agreement also delegates to the arbitrator several threshold issues, including "disputes about whether any claims, controversies, or disputes between us are subject to arbitration" and "claims . . . regarding the scope, interpretation, validity, and enforceability of any Independent Contractor Arbitration Agreement or this Arbitration Agreement." Appellants refer to these provisions as the "delegation clause."

The agreement "is made pursuant to a transaction involving interstate commerce and shall be governed by the Federal Arbitration Act [(FAA)]."

### B.    Leeper's Lawsuit Against Appellants

On March 14, 2024, Leeper filed a complaint against appellants styled as a "representative complaint for injunctive and declaratory relief, civil penalties, and other relief under [PAGA]." (Capitalization omitted.) The complaint alleges Shipt "misclassified [Leeper] and other similarly situated [w]orkers as independent contractors and, in so doing, has violated multiple provisions of the . . . Labor Code." Leeper is alleged to qualify as "an 'aggrieved employee' " under PAGA, because she was "employed by Shipt during the applicable statutory period and suffered the Labor Code violations alleged [in the complaint]."

---

[3] The arbitration agreement states that it applies to Shipt and, inter alia, any of Shipt's "affiliates or parents."

3

On these bases, Leeper alleged a single count for "[PAGA] non-individual penalties." (Capitalization omitted.) Leeper alleged that she "[brought] this PAGA action on a representative, non-individual basis" and "in [her] representative capacity as an aggrieved employee on behalf of the [s]tate and all similarly aggrieved individuals subjected to the [alleged] violations." Leeper alleged her "claim is typical of the claims of the others whom [she] seeks to represent" and that "[her] claims are representative of and co-extensive with the claims of the other aggrieved individuals." She sought "non-individual civil penalties" and "non-individual injunctive and declaratory relief." In the complaint, Leeper also addressed the arbitration agreement as follows: "Because [Leeper] alleges only non-individual PAGA claims on a representative basis, Shipt cannot compel them to arbitrat[ion]."

On May 14, 2024, appellants filed a motion to compel arbitration of the individual portion of Leeper's PAGA action and, under the delegation clause, any disputes regarding the enforceability of the arbitration agreement.[4] In her opposition, Leeper argued she had not alleged any individual claims, and thus there was nothing to compel to arbitration. She did not respond to appellants' argument that the agreement delegated

_____

[4] Before appellants filed this motion, the parties' counsel exchanged emails regarding their differing views about the applicability of the arbitration agreement to Leeper's lawsuit. Leeper contends in the factual background section of her brief to this court that this correspondence did not satisfy, and that appellants in no other way satisfied, the requirement that they meet and confer regarding their motion to compel. Leeper does not present any legal argument that this is a basis for affirming the court's order on appeal.

to the arbitrator any questions regarding the arbitrability of disputes or the enforcement of the agreement. Appellants' motion further sought a stay of the litigation pending arbitration, which Leeper also opposed.

The trial court denied the motion on the basis that "[the] action [was] solely a representative PAGA suit without any individual causes of action" and "[a]s such, the [c]ourt [had] no individual cause of action it may compel to arbitration."

This appeal followed.

## DISCUSSION

### A.    General Legal Framework Under PAGA

"Informed by findings of pervasive underenforcement of many Labor Code provisions and 'a shortage of government resources to pursue enforcement,' the Legislature enacted PAGA to create new civil penalties for Labor Code violations and ' "to allow aggrieved employees, acting as private attorneys general, to recover [those] penalties." ' [Citation.] Specifically, PAGA authorizes 'an aggrieved employee,' acting as a proxy or agent of the state Labor and Workforce Development Agency (LWDA), to bring a civil action against an employer 'on behalf of himself or herself and other current or former employees' to recover civil penalties for Labor Code violations they have sustained." (*Adolph v. Uber Technologies, Inc.* (2023) 14 Cal.5th 1104, 1113 (*Adolph*), quoting § 2699, subd. (a).) This definition of a PAGA action is contained in section 2699, subdivision (a). Section 2699, subdivision (c)(1) addresses what a plaintiff must establish in order to be an "aggrieved employee" with standing to bring a

5

PAGA action.[5]  (See §§ 2699, subds. (a) & (c); see *Adolph, supra*, 14 Cal.5th at p. 1121.)  Here, we are concerned with what a PAGA action entails as defined by section 2699, subdivision (a), and not standing.

All PAGA actions are inherently representative in that a PAGA plaintiff is always acting as a proxy for the LWDA and collecting civil penalties on the LWDA's behalf.  (See *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. 639, 648–649 (*Viking River*); *Adolph, supra*, 14 Cal.5th at p. 1114.)  Such civil penalties are otherwise recoverable only by the LWDA, and a PAGA plaintiff must remit the majority collected in a PAGA action to the LWDA.  (§ 2699, subd. (m) ["civil penalties recovered by aggrieved employees shall be distributed as follows:  65 percent to the [LWDA] . . . and 35 percent to the aggrieved employees"].)  By contrast, a plaintiff cannot recover civil penalties via a non-PAGA Labor Code claim; instead, such a claim may seek "statutory penalties" the LWDA is not entitled to collect.  (*Kim, supra*, 9 Cal.5th at p. 81.)

A PAGA plaintiff is acting in a representative capacity in another way as well:  By asserting a PAGA claim based on violations that employees other than the plaintiff have suffered.  (*Viking River, supra*, 596 U.S. at pp. 648–649.)  In *Viking River*, the United States Supreme Court used the term " 'representative' PAGA claim[ ]" to refer to this aspect of a PAGA action, and the

_____

[5] Section 2699, subdivision (c)(1) defines such an aggrieved employee as "any person who was employed by the alleged violator and personally suffered each of the violations alleged." (§ 2699, subd. (c)(1); see *Adolph, supra*, 14 Cal.5th at p. 1121 [to have standing a plaintiff must show "that Labor Code violations were committed against [the plaintiff] while [the plaintiff] was employed by [the defendant]"].)

6

term " 'individual PAGA claim' " to refer to a portion of a PAGA action that is "based on code violations suffered by the plaintiff." (*Id.* at p. 649.) The parties here employ similar terminology in their briefing, as did the California Supreme Court in a recent decision. (See *Adolph, supra*, 14 Cal.5th at p. 1114.) We do so for the purposes of this decision as well.

## B. Leeper's PAGA Action Alleges an Individual PAGA Claim

Appellants argue that Leeper's PAGA action includes an individual PAGA claim on Leeper's behalf,[6] and thus is not, as Leeper contends and the trial court concluded, a PAGA action brought in a purely representative capacity on behalf of other employees.[7] We agree with appellants.

### 1. *Statutory Language Unambiguously Provides That Any PAGA Action Includes an Individual PAGA Claim*

Appellants argue that a necessary component of every PAGA action is an individual PAGA claim, and thus that Leeper,

---

[6] Leeper characterizes appellants' argument as asserting that she "*should have brought* individual claims in order to establish standing to sue." We disagree with this characterization of appellants' argument.

[7] As noted, for the purposes of this appeal, in referring to aspects of a PAGA action as "individual" or "representative," we are setting aside—as have recent decisions of the United States and California Supreme Courts in their use of these terms— that all aspects of a PAGA action are inherently representative because the plaintiff acts on behalf of the LWDA. We thus recognize that even what we refer to as "individual PAGA claims" are, in this sense, representative.

having alleged a cause of action under PAGA has, as a matter of law, alleged both an individual claim and a representative claim. Because this presents a question of statutory interpretation, our review is de novo.[8]  (*Adolph, supra*, 14 Cal.5th at p. 1120.)

"In construing a statute, our task is to ascertain the intent of the Legislature so as to effectuate the purpose of the enactment."  (*Cummins, Inc. v. Superior Court* (2005) 36 Cal.4th 478, 487.)  The first step in this endeavor is always looking to "the words of the statute, which are the most reliable indications of the Legislature's intent."  (*Ibid.*)  In pertinent part, section 2699, subdivision (a) describes a PAGA claim as "a civil action brought by an aggrieved employee on behalf of the employee and other current or former employees."[9]  The unambiguous and ordinary meaning of the word "and"

_____

[8] Because we find this argument dispositive, we do not reach appellants' alternative argument that, even if every PAGA action does not necessarily include an individual claim, Leeper's complaint alleges such an individual PAGA claim.  We also do not reach the issue, about which the parties disagree, of the appropriate standard of review for assessing this alternative argument.

[9] The full description of a PAGA action in section 2699, subdivision (a) is as follows:  "Notwithstanding any other provision of law, any provision of this code that provides for a civil penalty to be assessed and collected by the [LWDA] or any of its departments, divisions, commissions, boards, agencies, or employees, for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of the employee and other current or former employees against whom a violation of the same provision was committed pursuant to the [notice and fee] procedures specified in Section 2699.3."

is conjunctive, not disjunctive.  Thus, the clause "on behalf of the employee *and* other current or former employees" (§ 2699, subd. (a), italics added) means that the action described has *both* an individual claim component (plaintiff's action on behalf of the plaintiff himself or herself) *and* a representative component (plaintiff's action on behalf of other aggrieved employees).

Leeper argues that another part of the statute trumps the plain meaning of this conjunctive language and allows the individual employee the option of bringing only a representative claim.  Namely, she points to language in section 2699 stating that civil penalties "to be assessed and collected by the [LWDA] . . . for a violation of this code, *may, as an alternative*, be recovered through a civil action brought by an aggrieved employee on behalf of the employee and other current or former employees against whom a violation of the same provision was committed."  (§ 2699, subd. (a), italics added.)  But this language is referring to PAGA actions seeking civil penalties otherwise only recoverable by the LWDA as an alternative *to the LWDA itself collecting those penalties.*  (See *Kim, supra*, 9 Cal.5th at pp. 80–81.)

Leeper also cites language in section 2699, subdivision (k)(1) providing:  "Nothing in [PAGA] shall operate to limit an employee's right to pursue or recover other remedies available under state or federal law, either separately or concurrently with an action taken under [PAGA]."  By its own terms, this refers to non-PAGA claims—i.e., "other remedies" *besides* those set forth in PAGA.  (§ 2699, subd. (k)(1).)  It thus speaks to the right of a PAGA plaintiff to bring a non-PAGA individual claim or a class action claim seeking statutory

9

penalties to compensate the plaintiff or class of plaintiffs—not civil penalties largely payable to the LWDA—in addition to a PAGA claim.  (See *Kim, supra*, 9 Cal.5th at p. 88.)

Accordingly, based on the unambiguous language in section 2699, subdivision (a), any PAGA action necessarily includes both an individual PAGA claim and a representative PAGA claim.  Leeper's interpretation would have us either excise the language "on behalf of the employee" or interpret the word "and" to mean "and/or."  (§ 2699, subd. (a).)  Doing either would be contrary to fundamental tenets of statutory construction that we assign the "statute's words . . . their usual and ordinary meanings, and constru[e] them in context" (*Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1190 (*Wells*)), and that we not "render statutory language meaningless" (*Plantier v. Ramona Municipal Water Dist.* (2019) 7 Cal.5th 372, 386).

We recognize that the existence of an individual PAGA claim in every PAGA action means this claim often may be separately compelled to arbitration where the FAA applies (see *Viking River, supra*, 596 U.S. at p. 642), which may trigger a stay of the litigation of the representative PAGA claim (see Code Civ. Proc., § 1281.4) and even potentially affect the outcome of that litigation via issue preclusion (see *Rocha v. U-Haul Co. of California* (2023) 88 Cal.App.5th 65, 69).  But Leeper's contention that this result contravenes public policy is not a ground for ignoring the unambiguous language of the PAGA statute.  (*Wells, supra*, 39 Cal.4th at p. 1190 [when statutory "words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs"]; see *ibid.* [only "[i]n cases of uncertain meaning . . . we

10

may also consider the consequences of a particular interpretation, including its impact on public policy"].)

In any case, statutory history supports our interpretation of what the Legislature intended. Namely, legislative history reflects that the Legislature deliberately chose the word "and" and rejected the word "or" in the statutory description of a PAGA action as "a civil action . . . on behalf of [the plaintiff] *and* other current or former employees." (§ 2699, subd. (a), italics added.) Namely, the version of section 2699 in the originally proposed Senate bill used the phrase "a civil action . . . on behalf of himself or herself *or* other current or former employees." (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 796 (2003–2004 Reg. Sess.) as amended May 12, 2003, p. 8, italics added.) In an "author's technical amendment" to the initially proposed bill, "in order to clarify the intent of the bill and correct drafting errors," the author replaced the word "or" with the word "and." (*Ibid.*, capitalization omitted.) The Legislature accepted this change without opposition, and it is reflected in the final version of the statute.

### 2. *PAGA Standing Decisions Leeper Cites Do Not Support a Different Result*

Leeper argues that two decisions of the California Supreme Court, *Kim, supra,* 9 Cal.5th 73 and *Adolph, supra*, 14 Cal.5th 1104, support her interpretation of the statute. Leeper similarly relies on a recent decision of Division Six of this court, *Balderas v. Fresh Start Harvesting, Inc.* (2024) 101 Cal.App.5th 533 (*Balderas*). But none of the cases she cites even speaks to the issue presented here—that is, the definition of a PAGA claim— nor does any interpret the statutory language at issue here.

11

### a. The California Supreme Court's Decision in *Kim*

To support her proposed interpretation of PAGA, Leeper cites to language in *Kim* stating that the statute "expressly authorizes PAGA suits brought 'separately' from individual claims for relief" (*Kim, supra*, 9 Cal.5th at p. 88), and that the Legislature did not "intend[ ] to make PAGA standing dependent on . . . the maintenance of a separate, unresolved claim" (*id.* at pp. 90–91). But this language refers to individual non-PAGA claims—not individual PAGA claims as we define and discuss them in this opinion, and as the California Supreme Court defined and discussed them in *Adolph*. (See *Adolph, supra*, 14 Cal.5th at p. 1114.) Indeed, it was only after *Viking River*— which postdates *Kim*—that courts began discussing the possibility of splitting PAGA claims into individual and representative components that might be adjudicated in separate fora. The plaintiff in *Kim* had settled "his own Labor Code claims against" the defendant seeking statutory penalties not recoverable under PAGA, and the question presented to the high court was whether that settlement of individual non-PAGA claims deprived him of standing to bring a PAGA action seeking civil penalties. (*Kim, supra*, 9 Cal.5th at p. 82.) The court concluded it did not. Thus, the language in *Kim* that PAGA "expressly authorizes PAGA suits brought 'separately' from individual claims for relief . . . (§ 2699, subd. (g)(1) . . . )" (*Kim, supra*, at p. 88), and that the Legislature did not "intend[ ] to make PAGA standing dependent on . . . the maintenance of a separate, unresolved claim" (*id.* at pp. 90–91), is referring to individual *non-PAGA* claims. It does not address individual PAGA claims and therefore does not guide our analysis.

*Kim* thus addressed only the question of standing, not the definition of a PAGA claim.  (See *Kim, supra,* 9 Cal.5th at p. 80, fn. omitted ["[t]his case presents an issue of first impression: Do employees lose standing to pursue a claim under [PAGA] if they settle and dismiss their individual claims for Labor Code violations"] & *id.* at p. 82.)  Because the question of standing depends solely on whether a plaintiff is an aggrieved employee as defined by section 2699, subdivision (c)(1) (see *Kim, supra*, at pp. 83–84; accord, *Adolph, supra*, 14 Cal.5th at pp. 1116 & 1120), *Kim* neither had occasion to interpret, nor did it interpret, section 2699, subdivision (a) defining what a PAGA action necessarily includes.

     b.  The California Supreme Court's Decision in *Adolph*

*Adolph, supra*, 14 Cal.5th 1104, unlike *Kim*, does discuss individual PAGA claims.  The plaintiff had brought a PAGA action expressly including an individual PAGA claim component and a representative PAGA claim component.  The Supreme Court concluded the plaintiff's individual PAGA claim component could be adjudicated via arbitration without the plaintiff losing standing to pursue the remaining representative PAGA claim portion in court.  The *Adolph* court did not, therefore, have occasion to consider whether the plaintiff could have, from the beginning of his lawsuit, alleged only a representative PAGA claim.  Rather, like *Kim*, *Adolph* speaks only to the requirements for PAGA standing based on section 2699, subdivision (c)(1)—not the conceptually and legally distinct issue of what claims a PAGA action necessarily involves.

### c. The Court of Appeal's Decision in *Balderas*

Finally, Leeper argues that *Balderas, supra,* 101 Cal.App.5th 533, supports his position that a plaintiff may properly allege only a representative PAGA claim. *Balderas* is another standing case, the holding of which addresses only PAGA standing issues and thus relies only on section 2699, subdivision (c)(1)'s definition of "aggrieved employee." *Balderas* did not have occasion to discuss, did not discuss, and its holding does not address, whether a plaintiff may carve out an individual PAGA claim from a PAGA action. In arguing to the contrary, Leeper relies entirely on dicta in *Balderas* that may suggest the Court of Appeal accepted the plaintiff's and trial court's characterization of PAGA claims as capable of being asserted on behalf of aggrieved employees other than the named plaintiff. (*Balderas, supra,* at p. 538.)

In sum, neither *Kim*, *Adolph*, nor *Balderas* suggests we should—let alone requires that we must—reach the interpretation of section 2699, subdivision (a) proposed by Leeper.

### C. The Court Erred in Not Compelling Leeper's Individual PAGA Claim to Arbitration and Staying the Litigation

The only basis Leeper argues for affirming the order, and the only basis Leeper raised below in opposing the motion, was that her complaint did not allege any individual claim.[10]

---

[10] Leeper does not contend that Leeper's individual PAGA claim falls outside the scope of the arbitration agreement. Nor does she deny the enforceability of the arbitration agreement.

14

Because we disagree, the court on remand must order plaintiff's individual PAGA claim to arbitration.

Appellants further argue that the court should have stayed the portion of the litigation remaining in court. We agree that the Code of Civil Procedure requires such a stay. (See Code Civ. Proc., § 1281.4 ["if a court of competent jurisdiction, . . . has ordered arbitration of a controversy which is an issue involved in an action or proceeding pending before a court of this state, the court in which such action or proceeding is pending *shall*, upon motion of a party to such action or proceeding, stay the action or proceeding," capitalization omitted & italics added].) The duration of the stay, however, remains within the court's discretion. (See *ibid.* [requiring such a stay "until an arbitration is had in accordance with the order to arbitrate or until such earlier time as the court specifies"].)

---

Accordingly, there is no need to address appellants' arguments that the delegation clause requires the arbitrator to decide disputes regarding these issues.

## DISPOSITION

We reverse the court's order. We direct the court to issue a new order compelling the parties to arbitrate Leeper's individual PAGA claim and staying litigation of the representative PAGA claim for an amount of time to be determined by the court.

Appellants are awarded their costs on appeal.

<u>CERTIFIED FOR PUBLICATION</u>.


ROTHSCHILD, P. J.

We concur:


WEINGART, J.


KLATCHKO, J.*

---

\* Judge of the Riverside Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.